THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BRIAN D. SONNTAG, Defendant-Appellant.

Second District   No. 2—91—0887

Opinion filed December 18, 1992.

Diane Mueller, of Madsen, Sugden & Gottemoller, of Crystal Lake (Ralph E. Madsen, of counsel), for appellant.

Thomas F. Baker, State's Attorney, of Woodstock, and Joan M. Kripke, of Chicago (William L. Browers and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Brian D. Sonntag, appeals from a trial court order denying his motion to vacate his guilty plea to four counts of unlawful delivery of a controlled substance and two counts of criminal drug conspiracy. He raises the following issues: whether the trial court erred in entering convictions of the inchoate offenses, as well as the substantive ones; and whether sections 401(a)(7) and 401(b)(7) of the Illinois Controlled Substances Act (Act) (Ill. Rev. Stat. 1989, ch. 56½, pars. 1401(a)(7), (b)(7)) violate both the equal protection and due process clauses of the United States Constitution and the State of Illinois Constitution.

On October 31, 1990, defendant was indicted on the following offenses: four counts of unlawful delivery of a controlled substance (greater than 10 objects containing in them lysergic acid diethylamide (LSD)); two counts of criminal drug conspiracy; and one count of unlawful delivery of a controlled substance while on school property. On March 4, 1991, defendant entered a "blind" plea of guilty to all counts of the indictment except that of unlawful delivery of a controlled substance while on school property which was nol-prossed by the State. At the time of his plea, defendant was admonished that the charges against him were all Class X felonies. (See Ill. Rev. Stat. 1989, ch. 56½, pars. 1401(a), 1405.1(c).) A presentence investigation and report was ordered.

On April 3, 1991, new counsel on behalf of the defendant filed a motion to withdraw his plea of guilty. The motion, *inter alia*, alleged that the classification of the charge of unlawful delivery of a controlled substance of greater than 10 objects as a Class X felony was irrational, unreasonable and arbitrary and, thus, violated the defendant's right to due process and equal protection. The trial court denied the motion to vacate the guilty plea.

On July 12, 1991, the trial court sentenced the defendant to concurrent sentences of 12 years in the Department of Corrections on each of the six counts. Defendant's motion for reconsideration of his sentence was denied. This appeal followed.

■ Defendant contends, first, that he was improperly sentenced for both the inchoate and substantive offenses in this case. (See Ill. Rev. Stat. 1989, ch. 38, par. 8—5.) The State argues that defendant has waived this issue inasmuch as he failed to raise it in either his motion to vacate his guilty plea or in his motion to reconsider his sentence. However, the State concedes that the issue may be reviewed under the plain error doctrine (134 Ill. 2d R. 615(a)) and confesses error. Therefore, we vacate defendant's convictions and sentences on the two counts of criminal drug conspiracy.

Defendant also requests that, in the event this court reverses his convictions on the conspiracy counts, the cause be remanded for a new sentencing hearing. Where a defendant is convicted of multiple offenses, reversal of one conviction does not *per se* require that the defendant be resentenced on the remaining conviction or convictions, as long as the record shows that the trial court considered the offenses separately and sentenced the defendant separately on each offense. (*People v. Hagan* (1990), 199 Ill. App. 3d 267, 290-91.) We note that at the sentencing hearing the trial court did not delineate between the conspiracy and the delivery charges. However, the trial court explained that it was imposing the 12-year sentences because it believed that defendant would, given the opportunity, engage in similar conduct in the future and that such a sentence would both identify the problem with such conduct to the defendant and would assist him in dealing with the problems he would face upon being released. We are satisfied that the sentences imposed were not so interrelated as to require a new sentencing hearing. *Cf. Hagan*, 199 Ill. App. 3d 267.

Defendant contends sections 401(a)(7) and 401(b)(7), as amended by Public Act 86—604, violate both the equal protection clause and the due process clause of the United States Constitution and the State of Illinois Constitution. Defendant was found guilty and sentenced under section 401(a)(7), which provides that a person shall be guilty of a Class X felony if he delivers "either: (i) 10 grams or more but less than 100 grams of any substance containing [LSD], or an analog thereof, or (ii) 10 or more objects or 10 or more segregated parts of an object or objects containing in them or having upon them any amount of any substance containing [LSD] or an analog thereof." (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(7).) Section 401(b)(7) provides that a person shall be guilty of a Class 1 felony if he delivers "either: (i) more than 3 grams but less than 10 grams of a substance containing [LSD], or an analog thereof, or (ii) more than 3 objects or more than 3 segregated parts of an object or objects *** containing in them or having upon them any amount of any substance containing [LSD],

or an analog thereof." (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(7).) The thrust of defendant's challenge to the above statute is that, despite their differing potency, the same number of grams are considered to be equal to the same number of objects.

■ The State questions defendant's standing to challenge the constitutionality of section 401(b)(7) since he was not sentenced under that section of the statute. A party does not have standing to challenge the constitutional validity of a statutory provision if he is not directly affected by it unless the unconstitutional feature is so pervasive as to render the entire act invalid. (*People v. Mayberry* (1976), 63 Ill. 2d 1, 6.) A party who attacks a statute as unconstitutional must bring himself within the class aggrieved by the alleged unconstitutionality. (*Mayberry*, 63 Ill. 2d at 6.) Given that both sections of the statute equate grams of LSD with objects containing LSD, we conclude that defendant has standing to challenge both sections of the statute.

Like all legislative enactments, these statutory provisions carry a strong presumption of constitutionality, and all doubts must be resolved in favor of their validity. (*People v. Esposito* (1988), 121 Ill. 2d 491, 497.) The burden rests on the defendant, as the challenging party, to rebut this presumption and to introduce evidence which demonstrates that the statute is unconstitutional. *Esposito*, 121 Ill. 2d at 497.

■ Defendant contends that section 401 creates an unreasonable classification violative of the equal protection provisions of the United States and the Illinois Constitutions. Courts generally employ a two-stage analysis to determine whether a legislative classification deprives individuals of equal protection. Initially, the court determines the proper level of scrutiny to be applied to the challenged classification. When the statute under consideration affects a fundamental right or discriminates against a suspect class, courts will subject the legislation to strict scrutiny and uphold it only if it serves a compelling State interest. (*Esposito*, 121 Ill. 2d at 499.) Where, as here, the classification does not affect a fundamental right or discriminate against a suspect class, the proper standard for judging the statute is the rational basis test. Under this test, a statutory classification must bear a rational relationship to a valid legislative purpose, and the classifications created by the statute will be set aside only if based on reasons totally unrelated to the pursuit of a legitimate State goal. (121 Ill. 2d at 500.) A classification scheme will be upheld if any state of facts may reasonably be conceived which would justify the classification. It is only required that there be a reasonable basis for distin-

guishing between the classes created by the legislation. *Mayberry*, 63 Ill. 2d at 9.

As set forth in the statement of legislative intent found in the Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1100), the Act seeks, *inter alia*, to "penalize most heavily the illicit traffickers or profiteers of controlled substances, who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society." The Act goes on to state in pertinent part as follows:

"It is not the intent of the General Assembly to treat the unlawful user or occasional petty distributor of controlled substances with the same severity as the large-scale, unlawful purveyors and traffickers of controlled substances. To this end, guidelines have been provided, along with a wide latitude in sentencing discretion, to enable the sentencing court to order penalties in each case which are appropriate for the purposes of the Act." Ill. Rev. Stat. 1989, ch. 56½, par. 1100.

In *Chapman v. United States* (1991), 500 U.S. 453, 114 L. Ed. 2d 524, 111 S. Ct. 1919, Chapman was convicted of selling 10 sheets (1,000 doses) of blotter paper containing LSD. Section 841(b)(1)(B)(v) of title 21 of the United States Code calls for a mandatory minimum sentence of five years for the offense of distributing more than one gram of a "mixture or substance containing a detectable amount of [LSD]." (21 U.S.C. §841(b)(1)(B)(v) (1988).) Although the LSD by itself only weighed 50 milligrams, together with the blotter paper, it weighed 5.7 grams which resulted in the imposition of the mandatory minimum sentence of five years on Chapman. He challenged the constitutionality of including the "carrier medium" in the weight calculation for purposes of sentencing.

The Supreme Court first explained that LSD in an average dose weighs 0.05 grams and that there are 20,000 pure doses in a gram. Because it is such a small amount, the pure dose must be sold to retail customers in a "carrier." Pure LSD is dissolved in a solvent, such as alcohol, and either the solution is sprayed on paper or gelatin, or paper is dipped in the solution. The solvent evaporates, leaving minute amounts of LSD trapped in the paper or gelatin. The paper or gelatin weighs much more than the LSD. Thus, the 10 sheets of blotter paper carrying the 1,000 doses weighed 5.7 grams while the LSD by itself weighed less than the one gram necessary to trigger the five-year mandatory minimum sentence.

Chapman argued that by including the weight of the carrier, a major wholesaler of LSD, caught with 19,999 doses of pure LSD

would not be subject to the five-year mandatory minimum sentence while a minor "pusher" with 200 doses on blotter paper or even one dose on a sugar cube would be subject to the mandatory minimum sentence. In upholding Chapman's conviction and sentence, the Supreme Court found that Congress had a rational basis for its choice of penalties for LSD distribution in that it intended to punish severely large-volume drug traffickers at any level. The larger the quantity the more severe the penalty, regardless of the purity of the drug itself. The Court rejected Chapman's argument that those selling different numbers of doses will be subject to the same penalties. The court found that although varying degrees of culpability might be subject to the same sentence, it did not mean that the penalty system for LSD was unconstitutional since the distributors made their own choice of carriers.

The State points out that the Illinois legislature has followed Congress' lead and refused to draw a distinction between "wholesalers" and "retailers" of substances such as LSD. Our legislature has, however, drawn a distinction between unlawful users/petty distributors and unlawful purveyors/traffickers. The equal protection clause does not deny the States the power to classify in the exercise of their police power, and it recognizes the existence of a broad latitude and discretion in classifying. (*People v. McCabe* (1971), 49 Ill. 2d 338, 340-41.) " 'Whether the enactment is wise or unwise; whether it is based on sound economic theory; whether it is the best means to achieve the desired results, and whether the legislative discretion within its prescribed limits should be exercised in a particular manner are matters for the judgment of the legislature, and the honest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance.' " *McCabe*, 49 Ill. 2d at 341, quoting *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 593.

We are cognizant of the fact that the power to classify may not be used arbitrarily in the sense that it discriminates against one in favor of another similarly situated. (*McCabe*, 49 Ill. 2d at 341.) Given the method of distributing LSD, it is not the amount of the drug that becomes important but the ease of distribution of the drug in the carrier form. Without focusing on the number of carriers, the intent of the legislature to eradicate the heavy traffickers in LSD could never be realized. The more objects, regardless of what they weigh, the more LSD that can be sold to more "customers." The distribution becomes more widespread as a result, regardless of actual weight.

Defendant cites *People v. Christy* (1990), 139 Ill. 2d 172. In that case, our supreme court held that the penalties for aggravated kidnapping and armed violence were unconstitutionally disproportionate, because two statutes with identical elements could not result in two different penalties. Defendant argues that since the elements for a violation of section 401(a)(7)(i) and section 401(a)(7)(ii) are identical their penalties should be identical. Defendant points out that had the objects he was charged with delivering been weighed all four delivery counts against him would have been Class 3 felonies rather than the Class X ones he was sentenced for in this case.

*Christy* is distinguishable from the case at bar. As we have explained above, the evil sought to be eradicated is the widespread distribution of LSD. Therefore, it would make no sense to punish those who deal in objects less severely simply because the objects weigh less, as this factor only helps to increase the distribution. As the Supreme Court in *Chapman* stated:

"[Chapman] argue[s] that those selling different numbers of doses, and, therefore, with different degrees of culpability, will be subject to the same minimum sentence because of choosing different carriers. *The same objection could be made to a statute that imposed a fixed sentence for distributing any quantity of LSD, in any form, with any carrier. Such a sentencing scheme—not considering individual degrees of culpability— would clearly be constitutional.* Congress has the power to define criminal punishments without giving the courts any sentencing discretion." (Emphasis added.) 500 U.S. at 466-67, 114 L. Ed. 2d at 539, 111 S. Ct. at 1928.

We conclude that the legislature had a rational basis for the penalty provisions found in sections 401(a)(7)(i) and (a)(7)(ii) and 401(b)(7)(i) and (b)(7)(ii) and that, therefore, defendant was not denied his constitutional right to equal protection.

Defendant also argues that he was denied his constitutional right to due process.

■ Legislation will survive a substantive due process challenge so long as it is reasonably designed to remedy the evils the legislature has determined to be a threat to the public health, safety and general welfare. (*People v. Pehrson* (1989), 190 Ill. App. 3d 928, 932.) While acknowledging that the ends to be achieved, namely, the protection of society from the evils of LSD, are proper, defendant argues that classifying punishment for the delivery of LSD according to the amount of objects is an unreasonable method of achieving that end. Defendant's reliance on *People v. Bradley* (1980), 79 Ill. 2d 410, however, is

misplaced. In that case our supreme court, citing the legislative intent of the Act that drug traffickers are to be punished more severely than those who merely possess drugs, held that a penalty section that imposed a more severe sentence for the possession of a drug than delivery of the same amount of the drug was violative of the due process clause of the Illinois Constitution. (*Bradley*, 79 Ill. 2d at 418.) It was a clear violation of legislative intent to punish the possessors of drugs more severely than the distributors who facilitate the ever widening use of unlawful drugs. In the case before us, we are concerned only with the delivery of LSD.

Defendant argues further that under the statute while an individual who delivers 10 objects of LSD is guilty of a Class X felony, an individual who delivers 2 grams of LSD in a paper bag is guilty only of a Class 3 felony under either the object or weight provision even though the 2 grams could have become 40,000 objects and been distributed to 40,000 people. However, as the Supreme Court stated in *Chapman*, a statute that imposed a fixed sentence for distributing any quantity of LSD, in any form, with any carrier, not considering the individual degrees of culpability, would not be unconstitutional. *Chapman*, 500 U.S. at 456-57, 114 L. Ed. 2d at 533, 111 S. Ct. at 1923.

Defendant maintains that sections 401(a)(7) and (b)(7) violate the void for vagueness doctrine embodied in the due process clause of the Constitution.

Due process requires that a statute must not be so vague that men of common intelligence must necessarily guess at its meaning or application. (*People v. Fabing* (1991), 143 Ill. 2d 48, 53.) The statute must provide sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions, and its prohibitions must be sufficiently definite when measured against common understanding and practices. (*Fabing*, 143 Ill. 2d at 53.) However, a statute is unconstitutionally vague on its face only if it provides no standard of conduct at all, meaning that the ambiguity is so pervasive that the statute is incapable of any valid application. (143 Ill. 2d at 55.) The determination of whether a statute is void for vagueness must be made in the factual context of each case. (*People v. Bales* (1985), 108 Ill. 2d 182, 189.) A defendant therefore may be prosecuted under a statute without violating his due process rights if his conduct clearly falls within the statutory proscription even though the statute may be vague as to other conduct. *Bales*, 108 Ill. 2d at 189.

■ There is no dispute that defendant engaged in conduct proscribed by the statute, namely, the delivery of LSD. Defendant argues

that law enforcement officials will be unable to determine that a "segregated part" refers to a separately demarcated subsection of a larger object and not to drops of LSD on one piece of blotter paper. In *Chapman*, the Court dealt with a similar argument as follows:

> "[Chapman] do[es] not claim that the sentencing scheme at issue here has actually produced an arbitrary array of sentences, nor did [his] motions in District Court contain any proof of actual disparities in sentencing. Rather, [he] challenge[s] the Act on its face on the ground that it will inevitably lead to arbitrary punishments. While hypothetical cases can be imagined involving very heavy carriers and very little LSD, those cases are of no import in considering a claim by persons such as [Chapman], who used a standard LSD carrier. Blotter paper seems to be the carrier of choice, and the vast majority of cases will therefore do exactly what the sentencing scheme was designed to do—punish more heavily those who deal in larger amounts of drugs." (*Chapman*, 500 U.S. at 466, 114 L. Ed. 2d at 539, 111 S. Ct. at 1928.)

In his own case, defendant does not dispute the number of objects containing LSD he was charged with delivering, thus indicating that the law enforcement officials had no difficulty making the above determination in his case. We therefore reject defendant's argument that sections 401(a) and (b) are unconstitutionally vague.

We conclude on the basis of the above that the penalty provisions of sections 401(a)(7) and (b)(7) did not deny defendant his right to due process or equal protection. We therefore vacate defendant's convictions of and sentences for criminal drug conspiracy counts and affirm defendant's convictions of and sentences for the delivery counts.

Affirmed in part; vacated in part.

UNVERZAGT and McLAREN, JJ., concur.